**In re WILLETTS.**

**Patent Appeal No. 3354.**

Court of Customs and Patent Appeals.
Dec. 10, 1934.

Robson D. Brown, of Hartford, Conn. (Sidney F. Parham, of Washington, D. C., John R. Hobson, of Hartford, Conn., and Vernon A. Dorsey, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This appeal involves four of five claims (one claim having been allowed) of an application for patent entitled, broadly, "Glass Tank Furnaces and Blocks Therefor." The rejection by both the Examiner and the Board of Appeals of the United States Patent Office, from the latter of which decisions the appeal to this court was taken, is for lack of invention over the prior art.

Three of the appealed claims, 2, 3, and 7, are apparatus claims, while claim No. 8 purports to be a method claim.

We quote claims Nos. 2 and 8:

"2. A glass tank furnace composed of a plurality of blocks, each block in the side walls of said tank having the major portion of its outer surface covered with heat-insulating material and the seams between said blocks in the said side walls being exposed to provide recesses overlying the seams, which recesses open directly to the atmosphere at one side."

"8. The method of insulating a glass tank furnace composed of a plurality of blocks which comprise covering the major portions of the outer surfaces of each of the said blocks with insulation, and leaving recesses overlying the seams between said blocks which recesses are opened to the atmosphere at one side thereof, to facilitate the freezing of glass penetrating between said blocks and to concentrate the attack of molten glass on the inner surfaces of the blocks toward the centers thereof."

The references cited are:

Murphy, 555,964, March 10, 1896.

Good, 1,421,211, June 27, 1922.

Brownlee, 1,695,528, December 18, 1928.

Appellant discloses a construction of tank furnaces and blocks therefor, in which furnaces glass is melted. One of the drawings shows a furnace whose bottom and sides are formed of the blocks. The side blocks are shown to be covered with heat-insulating material which extends to near the seams between the blocks. The seams themselves are, by this construction, left exposed over a space which the specification recites as being "suitably" about one-fourth inch in width. There is thus shown a construction in which, as stated by the Board of Appeals, "The insulating material is divided into panels by spaces between the panels, the spaces registering with the seams in the tank * * *."

The purpose of the application of the heat insulation is to prevent the cooling of the blocks from exposure to the atmosphere, while the purpose of the open spaces over the seams is to expose them and thus facilitate the cooling or "freezing" of such molten glass

as penetrates through the joints from within the furnace tank.

One of the drawings of the patent to Murphy, which is for a glass tank furnace, discloses a structure having a tank whose bottom and ends are surrounded by outer blocks. Openings designated in the specification as "cold air ports" are shown in the outer bottom blocks. The specification recites that these air ports are located "immediately beneath and opposite the joints forming the sides and bottom of said tank, also at the sides of the same, whereby the liquid glass exuding therefrom in the event of an opening at such point is cooled and solidified, forming a vitreous joint at such place or point."

The patent to Good shows a tank having heat-insulating material extending from its bottom up to a point adjacent the level of the molten glass within the tank. The specification of the patent discloses a tank whose sides and bottom are composed of "flux blocks." The tank is surrounded by an "insulation space" which is "preferably filled with sand."

The patent to Brownlee refers to the preservation of a more equal temperature of the glass "partly by adding insulations around the deeper portions of the refining tank to decrease the heat loss in this portion of the furnace, and partly by positively heating the shallower tank portion." There is shown a draw-pot and a certain tank or trough which is "substantially a continuation of the draw-pot." Each of these is "mounted over and carried by" what is designated a "heating furnace." Between these heating furnaces there is left a cooling space "to assist in cooling the joint" between the draw-pot and the trough. Another cooling space is shown between the heating furnace upon which the trough portion rests, and another tank described in the specification as "the refining tank."

In the decision of the Board of Appeals it is said, in effect, that the "warming portions" beneath the draw-pot may be considered to correspond to appellant's insulating panels, and that the spaces above described as lying adjacent the heating furnaces may be considered to cool (together with certain cooling pipes) the seams in the draw-pot in much the same manner and for the same purpose as indicated in the application.

It is conceded, as of course it must be, that no one of the references, of and by itself, discloses the structure of appellant. The position of the tribunals of the Patent Office is that the features which have been above de-

scribed, when taken together, anticipate appellant's teachings and prevent the allowance of the patent sought.

It is pointed out on behalf of appellant, in substance, that Murphy does not anywhere disclose in his patent the use of insulating material or insulation, nor does he use these terms within the four corners of his patent; that the supporting blocks at the bottom, in which are found the "air ports" of the specification, are not referred to in the patent as "insulation" or as "heat-insulating material"; that these lower blocks are, in fact, only for the purpose of supporting the tank bottom; that the outer blocks at the two ends of the tank do not contact the tank itself except at the very top edges of the end wall blocks above the normal glass level; that the full areas of all sides of the tank are wholly uncovered and uninsulated; that the structure shown is designed to create passages for the enforced cooling of the entire area of the side walls, and it is urged that Murphy "is the antithesis of appellant both in construction and function."

As to the Good patent, appellant's counsel points out that it simply shows a glass furnace tank whose insulating feature is solid—that is, there are no openings in the insulation which permit the exposure of the tank block joints, or any portion of the tank, to the atmosphere.

With respect to the Brownlee patent, the argument for appellant is, in effect, that such actual insulation as Brownlee discloses is the solid insulation of the refining tank; that there is no insulation whatever of the chamber comprising the draw-pot with its appurtenant tank, or trough, in which the actual melting apparently takes place; that in the heating furnaces underneath the draw-pot heat is generated and, when desired, is applied in addition to the normal heat which reaches the glass from other sources; and that it is not tenable to consider these heating furnaces as corresponding to appellant's panel insulation, the purpose of which is to conserve heat, not generate it.

The blocks at the end walls and beneath the bottom of Murphy's structure, if they have any insulating effect whatever, which may be doubtful, in view of their placement, certainly do not meet appellant's insulating structure, and such insulation as is taught by the other references is solid insulation without spaces therein. Furthermore, we are unable to agree that the heating furnaces of Brownlee by means of which the flowing, mol-

ten glass is "positively heated," as the specification declares, are equivalents, in a patentable sense, of appellant's insulated blocks.

Appellant's application is the only art before us which shows structure having insulation with spaces therein, and it is our view that the advancement shown over the prior art, disclosed in the combination of references, may properly be held to constitute invention.

Accordingly, the decision of the Board of Appeals denying patentability over the prior art is reversed.

Reversed.